IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ADAM E. ROWELL, | ) Civil Action No. 3:11-2523-MGL-JRM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) |
| Defendant. | ) |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on July 22, 2009 and October 25, 2010, respectively, alleging disability as of October 15, 2008.[1] Tr. 15, 157-166. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on March 9, 2011, at which Plaintiff appeared and testified. The ALJ issued a decision dated April 28, 2011, denying benefits and finding that Plaintiff was not disabled because under the medical-vocational guidelines (also known as the "Grids") promulgated

---

[1]On April 13, 1999, an Administrative Law Judge found that Plaintiff was disabled for a closed period from March 4, 1998 through March 4, 1999. See Tr. 15. On April 23, 2005, an Administrative Law Judge found that Plaintiff was disabled for a closed period of April 1, 2002 through January 1, 2004. Tr. 49-55, see Tr. 15.

by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.[2]

Plaintiff was thirty-two years old at the time of the ALJ's decision. He has an eighth grade education and past relevant work as a laborer. Tr. 202, 204. Plaintiff alleges disability since October 15, 2008, due to a status post fracture to his right leg (1998) and gunshot wound to his left leg (2003) with residual pain.

The ALJ found (Tr. 17-23):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post fracture to the right leg (1998) and gunshot wound to the left leg (2003) with residual pain (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light[3] work, as defined

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this
(continued...)

in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: frequently climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; and frequently pushing and pulling with bilateral lower extremities. He would also be limited to performing simple, routine, repetitive tasks as a result of pain.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 17, 1978 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied the request for review in a decision issued July 27, 2011 (Tr. 1-4), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on September 20, 2011.

---

[3](...continued)
category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

3

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff broke his right leg in January 1998, after he crashed his four-wheeler. He subsequently underwent multiple surgeries with skin grafts. Tr. 242-273. In 2002, Plaintiff sustained injuries to his left leg caused by a gun shot wound. See Tr. 275-276. Plaintiff consulted with Dr. Joseph R. Shaver in January 2005, after he burned his right leg with a heating pad. Tr. 366. He complained of significant arthralgias in his lower extremities, but denied paresthesias or anesthesias. Tr. 366-368. Plaintiff subsequently underwent surgical excision of the burn wounds and application of cadaver allograft. See Tr. 360-362. Plaintiff developed osteomyelitis (bone infection) in his right tibia, and on March 4, 2005, underwent surgical removal of the intramedullary rod and screws, as well as debridement of his right tibia. Tr. 346-347, 357-358.

On November 15, 2007, Plaintiff saw Dr. John Downey for complaints of pain involving his right knee, bilateral calves, and left foot. Plaintiff told Dr. Downey that the Oxycontin he had been taking for pain was not as effective as it had been in the past. Dr. Downey diagnosed chronic lower

4

extremity pain status-post osteomyelitis (inflamation/bone infection) and neuropathic pain. Neurontin was prescribed for Plaintiff's pain. Tr. 403-404.

An EMG performed by Dr. Downey on February 7, 2008, revealed evidence of moderate sural neuropathy in both of Plaintiff's legs, but was negative for generalized peripheral neuropathy or lumbar radiculopathy. Tr. 407. On May 7, 2008, Plaintiff reported that he thought his left foot pain was worse, probably secondary to his work hours. Dr. Downey assessed chronic severe neuropathic pain, plantar fasciitis, and degenerative joint disease. Tr. 409. When Plaintiff returned to Dr. Downey on July 28, 2008, he said his symptoms were the same and he asked for an increase in his medications. Dr. Downey increased Plaintiff's dosage of Neurontin. Tr. 411. On October 20, 2008, Plaintiff again said his symptoms were the same and Dr. Downey advised him to continue taking Neurontin and Oxycontin. Tr. 413.

Plaintiff sought medication refills from Dr. Downey on January 6, 2009. He said his pain had increased because he had run out of his medications two days earlier. Tr. 415. In March and April 2009, Plaintiff reported to Dr. Downey that he was better and was doing well with his medications. Tr. 417, 419. On August 4, 2009, Plaintiff reported he was having more pain since he "jumped off a machine" about three to four feet off the ground a few weeks previously. Plaintiff said he had been out of work for the previous couple of weeks secondary to foot pain, but he wanted to work. Tr. 423.

On September 28, 2009, Dr. Harriett R. Steinert performed a consultative examination of Plaintiff in connection with his application for benefits. Plaintiff complained of back pain and pain in the bottom of his left foot secondary to his previous injuries. On examination, Plaintiff had full range of joint motion in all four extremities, except for his left ankle. He had tissue loss in his left calf and well-healed skin grafts in his right leg. Plaintiff had no tenderness to palpation of any joints;

5

no inflammation, swelling, deformity, sensory, or motor deficits in any extremity; and no muscle atrophy. Tr. 427-428. Dr. Steinert noted Plaintiff had normal grip strength, fine and gross motor skills in both hands, deep tendon reflexes, and peripheral pulses. Straight leg raise testing was negative. Although Plaintiff could not walk on his toes and heels or squat down, he could walk across the room without an assistive device and could do tandem walking. Tr. 427-428. Left leg x-rays the same day showed post-traumatic changes of Plaintiff's distal tibia and fibula with healed bony injuries and soft tissue defect consistent with post-traumatic surgical changes and retained metallic foreign bodies. Tr. 432. X-rays of Plaintiff's right leg showed old healed traumatic changes of his distal fibula with internal fixation and fixation hardware present over the mid fibular shaft. Tr. 433. A lumbar spine x-ray was normal. Tr. 435.

On October 20, 2009, Plaintiff reported to a physician's assistant in Dr. Downey's office that his pain had been increasing over the previous few weeks. Plaintiff indicated that he had been on a "leave of absence" from work for the last two months. On examination, Plaintiff had an unassisted gait and normal muscle tone. Plaintiff's Oxycontin dose was increased and Plaintiff's use of an orthopedic boot for his left foot was discussed. Tr. 463.

On October 28, 2009, Dr. Hugh Wilson, a State agency medical consultant, reviewed Plaintiff's medical record and opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; push and pull with his legs no more than frequently; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, and kneel; and occasionally crouch and crawl. Tr. 437-443.

6

During a December 2009 visit to Dr. Downey's office, Plaintiff reported that he was terminated from his job at the end of October and had stopped his medications because he lost his insurance. Plaintiff indicated he had applied for disability but said he wanted to get back to work. Plaintiff said his symptoms had not changed. On examination, Plaintiff had an unassisted gait and station and normal muscle tone. Tr. 462.

In February 2010, Plaintiff reported to Dr. Downey's physician assistant that there were no changes in his symptoms, but the orthopedic boot helped with pressure. Plaintiff's dosage of pain medication was increased. Tr. 461. On April 12, 2010, Plaintiff again reported that his symptoms had not changed, and he had not been wearing his orthopedic boot. The medical record indicates that Plaintiff had unassisted gait and station and normal muscle tone, and Plaintiff was continued on his current pain medication. Tr. 460.

On May 18, 2010, Dr. Cleve Hutson, a State agency physician, reviewed Plaintiff's medical records. Dr. Hutson opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; push and pull with his legs no more than frequently; frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, crouch, and crawl; and should avoid concentrated exposure to hazards such as machinery and heights. Tr. 465-471.

On June 16, 2010 Plaintiff reported increased low back pain. Dr. Downey's examination revealed tenderness in Plaintiff's upper lumbar paraspinal muscles and continued pain involving his legs and back. Elavil was added to his other medications. Tr. 480. Plaintiff reported no changes in his symptoms on July 15, 2010. Tr. 479. In a letter dated August 11, 2010, Dr. Downey stated that Plaintiff had chronic and severe lifestyle-limiting neuropathic and orthopedic pain and continued to

7

be quite symptomatic and significantly physically limited in his ability to stand, walk, climb stairs, or lift. Dr. Downey opined that Plaintiff had significant limitations and was not capable of returning to gainful employment "pending further vocational rehabilitation training, counseling, and/or education." Tr. 473. Dr. Downey also completed a form stating that Plaintiff could not do continuous walking or standing; could not crawl, kneel, or climb stairs and ladders; could not stoop or bend repetitively; could not be in a cramped position; could not lift, push, or pull more than ten pounds; and could not be exposed to vibrating tools. Tr. 474.

On September 14, 2010, Plaintiff again reported to Dr. Downey that things had been about the same since his last visit. Examination revealed that Plaintiff had an antalgic gait on the left with shortened stance phase, and tender SI joints with limited spine range of motion. He had hyporeflexia and weakness following the bilateral S-1 nerve distribution, but otherwise had normal strength and reflexes. Dr. Downey discussed "joint protection principles, emphasizing the importance of obtaining [range of motion] prior to strengthening activities." Tr. 475-478.

On January 17, 2011, Plaintiff reported that his medications were still helping with his pain, his pain level was about the same, and he was stable. Dr. Downey found that Plaintiff was "healthy appearing" and in no evident distress; had a normal stance and gait; and had functional range of motion throughout all his extremities with no cyanosis, clubbing, or edema. He further noted that Plaintiff had hyporeflexia and weakness in the L-5/S1 myotomes bilaterally. Dr. Downey assessed lumbar radiculopathy and recommended further diagnostic testing. He advised Plaintiff not to drive or operate machinery while using pain medications because the medications might interfere with his concentration and response time. Tr. 497-500.

8

On March 8, 2011, Dr. Downey completed a questionnaire indicating that Plaintiff could independently initiate ambulation, could not sustain ambulation or complete activities, and needed an assistive device for walking. Dr. Downey stated Plaintiff that could not climb stairs without a handrail, could sit no more than two hours in an eight-hour workday, could stand and walk no more than one hour in an eight-hour workday, could not sit continuously in a work setting, had to get up and move around every thirty to forty minutes, could lift no more than twenty pounds, and could carry no more than ten pounds. Dr. Downey indicated that Plaintiff could regularly carry out activities of daily living independently without assistance, travel to and from his house and appointments, prepare meals, bathe, and dress. Dr. Downy estimated that Plaintiff would be absent from work, on average, more than three times a month. Tr. 503-510.

## **HEARING TESTIMONY**

Plaintiff testified at the hearing that he stopped working in October 2008, because of pain in his legs. Tr. 30. Plaintiff described jumping down off a machine at work, which hurt his left foot. Tr. 41. He reported breaking his right leg in a 1998 accident on a four-wheeler and then being shot in his left leg in 2001. Tr. 31. Plaintiff stated he had a lot of pain in his legs as well as in his heel from plantar fasciitis on the left. Tr. 31-32. He stated that his pain ranged from four to five (with medication), and seven to eight (without medication), on a ten-point scale. Tr. 32. Plaintiff indicated he took methadone for his pain, which made him "sleepy and loopy." Tr. 32. Plaintiff reported he started having back pain toward the end of 2008, and his back pain increased when he was up and moving around. Tr. 33. He testified that he had to elevate his legs the majority of the day because of bad circulation. Tr. 34. Plaintiff stated that he used an orthopedic boot whenever he is going to be up and moving around and sometimes used a cane. Tr. 36. Plaintiff reported he could walk for

9

about thirty minutes at a time, could lift only ten to twenty pounds, and could carry only five to ten pounds. Tr. 37. He stated that his friends and family did household chores for him and did his grocery shopping. Tr. 37-38. Plaintiff reported that he watched television, read novels, used a computer, went to church about once a month, and visited with family (often eating dinner with them) approximately two times a week. Tr. 35, 39-40. Plaintiff testified that his driver's license was suspended because of a DUI conviction in 2007, and therefore he did not drive. Tr. 40.

## **DISCUSSION**

Plaintiff alleges that the ALJ: (1) failed to follow the treating physician rule; (2) failed to follow Acquiescence Ruling ("AR") 00-1(4); (3) failed to properly evaluate his credibility; and (4) erred in relying on the medical-vocational guidelines. The Commissioner contends that substantial evidence[4] supports the final decision that Plaintiff was not disabled within the meaning of the Social Security Act ("SSA").

    A.    Treating Physician

Plaintiff alleges that the ALJ failed to follow the treating physician rule because the ALJ gave little weight to the opinion of his treating physician (Dr. Downey) and failed to discuss the factors required under 20 C.F.R. §§ 404.1527 and 416.927. He argues that the ALJ improperly relied

---

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

10

on the opinion of Dr. Hutson, a non-examining physician, who rendered his opinion prior to the majority of Plaintiff's visits to Dr. Downey and prior to Dr. Downey's opinions. Plaintiff argues that Dr. Downey's opinions are entitled to controlling weight because he treated Plaintiff on a regular basis for eight years, he was the physician most familiar with Plaintiff's history and medical findings, he based his opinion on extensive clinical and diagnostic abnormalities, he is a board certified specialist in physical medicine and rehabilitation, and his findings are consistent with the record including his treatment notes which documented Plaintiff's severe pain and the limiting impact of his pain. Additionally, Plaintiff argues that his limited activities of daily living do not support the ALJ's decision to discount Dr. Downey's opinion. The Commissioner contends that the ALJ reasonably considered Dr. Downey's opinions and discounted them because they were not supported by clinical findings, were not supported by Dr. Downey's treatment notes (in which Dr. Downey found that Plaintiff had an unassisted and normal gait and station and noted that Plaintiff was able to jump off a three to four foot machine); and were not supported by Dr. Steinert's objective findings. Additionally the Commissioner argues that the ALJ was not required to discuss in detail the § 404.1527 factors as he demonstrated that he applied these factors and provided good reasons for his decision.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585,

11

590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Downey's March 2011 opinion is not supported by substantial evidence. In his decision, the ALJ wrote that he gave "little weight to Dr. Downey'[s] March 8, 2011 finding that the claimant was limited to less than a full range of sedentary work, due to the fact that his findings are conclusion-based and unsupported by clinical findings...." Tr. 22. It is unclear from the decision whether the ALJ considered Dr. Downey's August 2010 opinions. As noted above, Dr. Downey opined in August 2010 that Plaintiff was significantly physically limited in his ability to stand, walk, climb stairs or lift without placing himself at risk for further damage; had significant limitations and was not capable of returning to gainful employment pending further vocational rehabilitation; could do no continuous walking or standing; could not crawl, kneel, or climb stairs and ladders; could not stoop or bend repetitively; could not be in a cramped position; could not lift, push, or pull more than ten pounds; and could have no exposure to vibrating tools. The

ALJ does not discuss these opinions and does not state why they were discounted such that it is unclear that he fully considered all of the evidence in discounting Dr. Downey's opinions. Additionally, the ALJ appears to have discounted Dr. Downey's March 2011 opinion based on Dr. Hutson's opinion. As Dr. Hutson's opinion was rendered in May 2010, he did not have access to many of Dr. Downey's treatment records or Dr. Downey's August 2010 and March 2011 opinions. It is recommended that this action be remanded to the Commissioner to consider Dr. Downey's opinions (August 2010 and March 2011) in light of all of the evidence.[5]

B. AR 00-1(4)

Plaintiff alleges that the ALJ erred in giving significant weight to the prior (April 2005) ALJ decision because he did not discuss the factors outlined in AR 00-1(4) and did not explain why he found that there was no significant change in Plaintiff's condition from the time of the previous ALJ's decision to the time of the current decision. He argues that his conditions are subject to change with the passage of time, the last ALJ's decision was made six years prior to the current decision (which lends support to a finding that the passage of time was relevant), his condition worsened such that he again was not able to work, and the evidence in this claim includes records from Dr. Downey which were not available at the time of the previous ALJ's decision. The Commissioner contends that the ALJ properly followed AR 00-1(4) by considering the possibility of deterioration, noting that Plaintiff's condition had not declined since the time of the prior determination.

---

[5]As it is unclear that the ALJ properly evaluated the opinion of Dr. Downey, it is also recommended that this action be remanded to consider Plaintiff's credibility in light of all of the evidence. The ALJ appears to have discounted Plaintiff's credibility, at least in part, based on the medical record.

In Lively v. Sec. of Health & Human Servs., 820 F.2d 1391 (4th Cir.1987), the Fourth Circuit noted that res judicata applies to Social Security disability cases and that this concept applies "to prevent the [Commissioner] from reaching an inconsistent result in a second proceeding based on evidence that has already been weight in a claimant's favor in an earlier proceeding." Lively, 820 F.2d at 1392. However, while an ALJ must consider prior residual functional capacity ("RFC") findings, he or she is not bound to adopt those RFC findings verbatim. Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 476–77 (4th Cir. 1999). Thus, "where a final decision ... after a hearing on a prior disability claim contains a finding required ... in the sequential evaluation process ..., SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a ... claim involving an unadjudicated period." AR 00–1(4), 2000 WL 43774, at *4. An adjudicator must consider the following factors:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Id. An ALJ "should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim." Id.

The ALJ in the present claim stated that he gave the findings of the ALJ in the prior (April 23, 2005) decision "significant weight" due to the fact that claimant's condition has not declined since the time of the prior determination. This finding does not appear to be supported by substantial evidence. First, it is unclear why the RFC found by the ALJ in the present claim is less restrictive than the RFC found by the ALJ in the April 2005 decision (where the ALJ here said he gave the prior

14

decision "significant weight"). In the present claim, the ALJ found that Plaintiff has the RFC to occasionally climb ladders, ropes, and scaffolds, and that Plaintiff could frequently push and pull with his bilateral lower extremities. See Tr. 20, 22. In the April 2005 decision, however, the ALJ found that Plaintiff could never climb ropes, ladders, or scaffolds, and had to avoid pushing and pulling with his lower extremities. Tr. 53, see Tr. 22. Second, the ALJ's determination that Plaintiff's condition had not declined since the time of the previous determination does not appear to be supported by substantial evidence. Plaintiff's RFC for at least some period of time after April 2005 may have been equivalent (if not greater) than that found by the ALJ in the previous decision because Plaintiff was able to perform more than light work. There is, however, medical evidence presented by Plaintiff that may show his RFC declined. Plaintiff underwent surgeries in 2005 and was diagnosed with osteomyelitis, an EMG in February 2008 indicated moderate sural neuropathy in both of Plaintiff's legs (Tr. 407), Dr. Downey increased Plaintiff's medications in July 2008 (Tr. 411), and in August 2009 Plaintiff reported experiencing more pain after he jumped off a machine (Tr. 423). Plaintiff also reported problems performing his work due to his impairments. Although AR 00-1(4) does not appear to require that the ALJ specifically discuss each of the three factors outlined above, it is unclear from the ALJ's conclusory statement why he concluded that Plaintiff's condition did not decline after the April 2005 decision. Thus, it is recommended that this action be remanded to properly consider Plaintiff's RFC in light of AR 00-1(4).[6]

---

[6]As consideration of Dr. Downey's opinion and AR 00-1(4) may affect the determination as to Plaintiff's RFC, it may also affect whether or not the Grids may be used. When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment
(continued...)

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to evaluate the opinion of Plaintiff's treating physician (Dr. Downey), determine Plaintiff's credibility, and determine Plaintiff's RFC in light of all the evidence, and (if necessary) to determine at step five whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

November 1, 2012
Columbia, South Carolina

---

[6](...continued)
opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983). Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).